# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

FINGERHUT BUSINESS SERVICES, INC.,

Petitioner,

v.

ETOYS INC. and
ETOYS DISTRIBUTION, LLC,

Respondents.

Civil No. 01-0064 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER**

---

Robert Weinstine, Steven C. Tourek, C.J. Schoenwetter, and Jennifer K. Bower, WINTHROP & WEINSTINE, P.A., 3000 Dain Rauscher Plaza, 60 South Sixth Street, Minneapolis, MN, 55402, for petitioner.

Andrew M. Luger and Nancy E. Brasel, GREENE ESPEL, P.L.L.P., 1700 Metro Center, 333 South Seventh Street, Minneapolis, MN, 55402; and Christine W.S. Byrd, Robert N. Klieger, and Philip M. Kelly, IRELL & MANELLA, L.L.P., 1800 Avenue of the Stars, Los Angeles, CA, 90067, for respondents.

Petitioner Fingerhut Business Services, Inc. ("Fingerhut") initiated this litigation to vacate or modify an arbitration award rendered by a three person arbitration panel in favor of respondents eToys, Inc. and eToys Distribution, LLC (collectively "eToys"). On January 8, 2001, the arbitration panel entered an arbitration award in the amount of $2,512,202 against Fingerhut and in favor of eToys. This matter is now before the Court

FILED ... 6 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

on Fingerhut's motion to vacate or modify the arbitration award and eToys' motion to confirm the arbitration award. Because petitioner has not demonstrated that this case falls into one of the narrow categories for which vacation or modification of an arbitration award is permitted, the Court denies petitioner's motion and grants respondents' motion. Accordingly, the arbitration award is confirmed.

**BACKGROUND**

On April 21, 1999, eToys entered into a Fulfillment Services Agreement ("Agreement") with Fingerhut that required Fingerhut to fulfill eToys' outbound customer orders from its distribution center in Utah. Fingerhut is a company providing direct marketing, fulfillment, merchandising, customer service and data analysis services to businesses that sell merchandise through catalogues or over the internet. eToys is a direct-to-consumer internet retailer that sells children's products, including toys, video games, software, books and music.[1] The underlying dispute in this case centers around the interpretation of the Agreement and what it required of each party.

Petitioner contends that the Agreement did not contain a volume or capacity requirement that committed Fingerhut to fulfilling a certain number of eToys' orders. Respondents, on the other hand, maintain that the Agreement required Fingerhut to meet specific performance standards with respect to the speed and accuracy of its fulfillment, receiving, and inventory maintenance systems. Respondents also contend that the

[1] eToys has recently closed down its operations as it was unable to pay creditors or to become profitable.

Agreement required 98% of its orders would be shipped within 24 hours of Fingerhut receiving the order.

A dispute arose between the parties after Fingerhut began to process and fulfill orders for eToys. Fingerhut was not able to fulfill the number of orders that eToys expected it to fulfill and it incurred significant additional shipping costs and fulfillment costs to get orders to its customers. Because of these excess costs and its belief that Fingerhut breached the parties' Agreement, eToys refused to pay Fingerhut approximately $16 million in unpaid invoices for fulfillment services.

The parties' Agreement contained an arbitration clause requiring any disputes arising under the contract to be arbitrated. The parties commenced arbitration proceedings after they were unable to resolve their dispute. The arbitration panel was comprised of two party-appointed arbitrators and one neutral arbitrator. Former United States District Court Judge for the Central District of California, Robert Bonner, was appointed as one panel member by eToys. Fingerhut selected former Hennepin County District Judge Robert G. Schiefelbein. The AAA appointed former Chief Judge of the United States District Court for the Northern District of Ohio, Thomas Lambros, as the neutral arbitrator.

Extensive pre-hearing discovery was taken by the parties and the panel held a ten-day evidentiary hearing on the merits. Following the hearing, the parties submitted post-hearing briefs and affidavits. On January 8, 2001, the Arbitration Panel issued its award, finding that Fingerhut had breached the Agreement and eToys had incurred a total of

$15,566,303 in damages.[2] That amount was offset against the Fingerhut's outstanding invoices ($12,405,651). eToys therefore received a net award of $2,512,202 (plus $924.36 in administrative costs). Arbitrator Schiefelbein authored a dissent to the award, strongly criticizing the majority's decision.[3] Fingerhut then moved, pursuant to Rule 48 of the Commercial Arbitration Rules, to correct the award. The panel denied Fingerhut's motion and Schiefelbein again dissented.

Fingerhut now moves to vacate or modify the arbitration award arguing that the decision by the Arbitration Panel was irrational and in manifest disregard of the law. eToys moves to confirm the arbitration award.

## DISCUSSION

### I. Standards for Confirmation, Modification and Vacation Under the Federal Arbitration Act

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1-16. The FAA established "a liberal federal policy favoring arbitration agreements," and it compels courts to be solicitous of the arbitration process and its results. *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). It requires that courts confirm arbitration awards "unless the award is vacated, modified, or corrected as

[2] The panel rejected the remaining claims of both parties.

[3] Schiefelbein wrote that "[t]he majority has rewritten the Fulfillment Services Agreement between the parties." He also concluded by stating that: "My dissent is not a mere difference of opinion on the weight of the evidence. The premises for the conclusion represented in the award borrows heavily from eToys tort theory, obviously meritless, to support a breach of contract award for which no support exists in fact or the evidence."

provided in sections 10 and 11 . . . ." 9 U.S.C. § 9. As a result, courts "tread lightly in reviewing arbitration awards." *Hoffman*, 236 F.3d at 461. The Eighth Circuit has explained that the scope of a district court's review of an arbitration award is "extremely narrow" and its "sole function is to decide whether the arbitrators' decision draws its essence from the contract." *Executive Life Ins. Co. v. Alexander Ins. Ltd.*, 999 F.2d 318, 320 (8th Cir. 1993).

Section 10 of the FAA enumerates those situations in which an arbitration award may be vacated. It provides that an award may be vacated:

> (1) Where the award was procured by corruption, fraud, or undue means.
>
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced.
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In addition to these specific grounds, the Eighth Circuit has also explained that "beyond the grounds for vacation provided in the FAA, an award will only be set aside where it is completely irrational or evidences a manifest disregard for the law." *Kiernan v. Piper Jaffray Cos.*, 137 F.3d 588, 594 (8th Cir. 1998). "These extra-statutory standards are extremely narrow: An arbitration decision may only be said to be irrational where it fails to draw its essence from the agreement, and an arbitration

decision only manifests disregard for the law where the arbitrators clearly identified the applicable, governing law and then proceed to ignore it." *Hoffman*, 236 F.3d at 461-62 (citing *Stroh Container Co. v. Delphi Indus.*, 783 F.2d 743, 749-50 (8th Cir. 1986)). Accordingly, a court should not vacate an arbitration award because it might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts. *Id.* at 462. "Although this may seem draconian, the rules of law limiting judicial review and the judicial process in the arbitration context are well established and the parties here, both sophisticated in the realms of business and law, can be presumed to have been well versed in the consequences of their decision to resolve their dispute in this manner." *Stroh Container Co.*, 783 F.2d at 751.

Finally, Section 11 of the FAA outlines the grounds upon which a court may modify an arbitration award. An arbitration award may only be modified in the following circumstances:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.

## II. Application of FAA Standards

It is in the context of these standards that the Court must review Fingerhut's motion to vacate or modify the arbitration award in this case. Petitioner essentially argues that there are four bases on which the Court can modify or vacate the award: (1) that the panel incorrectly calculated the interest on eToys unpaid, outstanding invoices; (2) that the panel engrafted a volume requirement into the terms of the Agreement that was contrary to its unambiguous terms; (3) that the panel improperly imposed a package fulfillment ratio in calculating damages; and (4) that procedural irregularities occurred in the panel's deliberation process that resulted in prejudice to petitioner and constituted manifest and fundamental unfairness. While the Court is troubled by the deliberation process undertaken by the panel and the legal analysis it used to resolve the case, none of the grounds advanced by petitioner in support of its motion meet the applicable standards required to vacate or modify the arbitration award. Accordingly, the arbitration award is confirmed.

### A. Calculation of Interest

Fingerhut first argues that the panel erred by imposing a 7% interest rate on eToys' outstanding invoices, rather than the 1½% per month interest rate, i.e. 18% annually, contained in the parties' Agreement.[4] This calculation, Fingerhut contends, is in manifest

[4] The Agreement provides under the heading "Payment Terms," that: "FBSI shall assess interest at a rate of 1 ½ % per month on all receivables not paid within the above-stated time periods. Interest will start accruing on the 45th day from the date of the invoice, and will continue to accrue until all overdue payments, plus interest charges, are paid in full."

disregard of the law. Petitioner contends that the decision to apply the 7% interest rate disregards the unambiguous terms of the contract and also disregards applicable Delaware law concerning prejudgment interest.[5] Fingerhut argues that this error by the panel resulted in its damages being understated by approximately $1,766,653.

In its arbitration award, the panel stated that:

> Although prejudgment interest is ordinarily discretionary, we believe that some prejudgment interest should be awarded in this matter, because the contract provided that invoices shall be paid 90 days after submission even where the amount of the invoices is disputed. Applying a 7% simple annual interest rate to the adjusted invoice amount of $12,405,651 and starting interest from March 31, 2000, results in an interest award of $659,450.

In response to Fingerhut's Rule 48 motion to correct the arbitration award, the panel further explained its rationale for assessing the 7% interest rate:

> It was our view that this provision of the Agreement was intended to apply to unpaid invoices net of any setoffs. . . . Under these circumstances, the majority could have decided to award no prejudgment interest at all. However, as an equitable manner, it seemed appropriate to us to award prejudgment interest, notwithstanding the absence of any contractual requirement to do so, on the allowable amounts of the unpaid invoices, before applying eToys' set off. In doing so, we concluded that applying a 7% prejudgment interest rate was equitable in the circumstances, because otherwise FBSI would have lost the opportunity costs of these funds and eToys would have unfairly benefited.

It seems clear to the Court that the panel concluded Fingerhut breached the parties' Agreement by failing to achieve certain performance standards set forth in the Agreement. Based on that finding, it was reasonable for the panel to choose not to enforce the terms of the Agreement, i.e. the interest calculation term, against eToys as it

---

[5] Under Delaware law, prejudgment interest on "judgments entered after May 13, 1980, shall bear interest at the rate in the contract sued upon." 6 Del. C. § 2301(a).

was the nonbreaching party. *See. e.g., Suburban Trust & Savings Bank v. University of Delaware*, 910 F. Supp. 1009, 1019 (D. Del. 1995) (explaining nonbreaching party is relieved from duty to perform under the terms of the contract). While the panel chose not to apply the contractual rate of interest to the outstanding invoices, it did apply a prejudgment interest rate of 7% so that eToys would not be unjustly enriched.

While the Court disagrees with the panel's interpretation of the parties' Agreement on this particular issue, it is not the province of the Court to relitigate the merits of the dispute. *UHC Management Co., Inc. v. Computer Sciences Corp.*, 148 F.3d 992, 998 (8th Cir. 1998) (explaining that the court will not "invade the province of the panel and re-adjudicate this dispute on its merits"). The parties understood full well the risks inherent in the arbitration process, yet chose to include an arbitration provision in the Agreement, rather than to resort to the court system for redress. *Stroh Container Co.*, 783 F.2d at 751 n.12 ("[p]arties should be aware that they get what they bargain for and that arbitration is different from adjudication"). The decision of the panel on this issue is based on its underlying interpretation that Fingerhut breached the parties' Agreement. *Id.* at 749-50 ("[a]n arbitration decision may only be said to be irrational where it fails to draw its essence from the agreement"). The panel did not "clearly identify the applicable governing law and then proceed to ignore it." *Hoffman*, 236 F.3d at 461-62. As a result, the Court cannot say that such an interpretation is in manifest disregard of the law.[6]

---

[6] Additionally, there is no basis for modification of the award on the ground advanced by Fingerhut. In this case, the panel did not make a "material miscalculation." 9 U.S.C. § 11(a). It clearly intended the interest rate that it used to calculate prejudgment interest. As a result, the Court will not modify the panel's award based on the interest calculation.

Again, the fact that this Court would likely have interpreted the Agreement differently is of no consequence. *Stroh*, 783 F.2d at 751 ("we may not set aside an award simply because we might have interpreted the agreement differently").

**B. Volume Requirements**

Fingerhut also argues that the panel improperly read into the contract volume requirements that disregarded the clear language of the Agreement. This interpretation, Fingerhut maintains, is also in manifest disregard of the law, justifying vacation of the arbitration award. Again, the Court disagrees.

Fingerhut contends that the arbitrators exceeded their authority by adding volume requirements to an integrated contract.[7] Petitioner supports this argument by citing the following two paragraphs from the arbitration award:

> Prior to signing the April 21, 1999 contract, eToys projected peak day volumes of 80,000 to 90,000, approximately half of such orders were expected to be multiple item orders or "multis." Moreover, prior to entering into the contract, representatives from FBSI represented that the Utah facility had the capacity to fulfill eToys' customer orders, including peak day projections. eToys relied upon these representations in entering into the April 21, 1999 contract with FBSI.
>
> . . .
>
> The evidence before us supports the assumption that FBSI knew or should have reasonably foreseen that eToys planned to ship all, or virtually all, its toys through FBSI's Utah facility, at least up to a projected 80,000 packages per day at peak volume.

[7] The panel expressly concluded in the award that "the parties' written contract is an integrated agreement."

While these excerpted portions of the award provide some context for the panel's decision, it is not at all clear from the written decision that these findings served as the basis for the award. As noted above, the panel expressly concluded that Fingerhut breached the Agreement by failing to achieve the following service level: "98% of [eToys customers'] orders will be shipped (manifested) within 24 hours after the order is received from eToys." It was on the basis of **this breach** that the panel appears to have awarded damages.[8] *See* Arbitration Award at 8 (explaining "it is correct that eToys was not required to fulfill any particular number of customer orders using [Fingerhut], yet [Fingerhut] contractually obligated itself to ship 98% of such customer orders as eToys gave it within 24 hours of receipt of the orders"). In fact, the panel did not conclude that Fingerhut breached any other performance standards. *See* Arbitration Award at 4 n.1 (finding that Fingerhut was excused from performance standard because of "mutual mistake"). Fingerhut's contention that additional volume requirements were read into the contract is therefore not persuasive. And even in the event that petitioner's contention was correct – that the panel considered parol evidence in interpreting the contract – such an error would still not be a legitimate ground for vacating the award. *Stroh Container Co.*, 783 F.2d at 751 ("[w]e may not set aside an award . . . because the arbitrators erred in interpreting the law or in determining the facts"). Any error made by the panel on this issue does not rise to the level of manifest disregard of the law.

---

[8] Further evidence that the panel relied on the breach of this one performance standard is the fact that the panel described the standard as the "critical performance standard." Arbitration Award at 4.

### C. Package Fulfillment Ratio

Fingerhut's next argument in support of its motion to vacate the award is that the arbitration panel improperly calculated damages based on a package fulfillment order ratio that was not contained in the parties' Agreement. By ignoring the clear and unambiguous language of the Agreement, Fingerhut argues that the panel acted in manifest disregard of the law. In the alternative, Fingerhut argues that the Court should modify the arbitration award, reducing it by $1.2 million to reflect the correct package fulfillment ratio.

The Court finds little merit in this argument. The panel clearly accepted the damage theory and calculation provided by eToys' expert. The panel's damage calculation was based on the difference between the actual shipping and fulfillment costs incurred by eToys and the expected shipping and fulfillment costs eToys would have incurred had the Agreement not been breached. The expected shipping and fulfillment costs were calculated by multiplying the number of customer orders fulfilled in the three months at issue in 1999 by the actual package-to-order ratio from 1998, which was 1.09. The damage calculation was reasonable given the panel's previous determination as to Fingerhut's liability. The panel even explained its use of the ratio:

> Regarding the assumption of 1.09 packages per order, it was based on eToys' actual experience in 1998. To the extent that one eToys document indicated an expected package per order ratio of 1.17, Mr. Schoch credibly explained that that figure was in error. FBSI proffered no other evidence that contradicted the 1.09 ratio.

This damage calculation did not disregard the law. The panel essentially made a credibility determination and accepted the testimony of eToys' expert. This is not an area

where the Court will second-guess the panel.[9] Additionally, this is not the type of situation in which a modification of the award is justified. There was no material miscalculation here and the panel clearly intended the damage figure that it awarded. 9 U.S.C. § 11(a). The Court will not vacate or modify the award on this basis.

### D. Inadequacies in the Deliberation Process

Fingerhut also argues that procedural irregularities occurred in the panel's deliberation process that resulted in prejudice to petitioner and constituted manifest and fundamental unfairness. Petitioner maintains that the abbreviated deliberation process prevented the parties from rendering a mutual, final and definite award as required by the FAA. While the Court expresses serious concern about the deliberative process undertaken by the arbitration panel in this case, the conduct of the panel does not require that the award be vacated.

Initially, the Court notes the very unique situation with which it is confronted. It is extremely rare that a former Judge would feel compelled to submit an affidavit that calls into question the deliberative process of the arbitration panel on which he sat. Because Arbitrator Schiefelbein took the extraordinary step of submitting such an affidavit, the Court has carefully considered the allegations made by petitioner.

Fingerhut alleges that there were essentially no deliberations, or at least no meaningful deliberations, conducted by the panel before rendering its award. Apparently,

---

[9] The Court notes that it does not appear from the record that Fingerhut even disputed Mr. Schoch's use of the package-to-order ratio during the hearing on the merits, but instead chose to argue that the ratio should be 1.17 rather than 1.09.

when the panel began its deliberations, the arbitrators met briefly over dinner where two of the three arbitrators made opening statements and then proceeded to discuss their impressions of the case.[10] The panel eventually suspended deliberations until the next morning, at which time the weather necessitated that two of the three panel members leave immediately.[11] Following the initial meeting, the panel convened only for a brief telephone conference before the arbitration award was rendered.

In the Court's opinion, the panel should have conducted more thorough and meaningful deliberations given the length of the evidentiary hearing and the scope of the evidence in the case. However, the Court finds that the deliberation process was not so flawed as to justify vacating the award. The Court cannot be in the practice of mandating a particular style, length, or process for arbitration panel deliberations.

Based on the record before it, the Court concludes that Arbitrator Schiefelbein was not excluded from the deliberations. *See Ormsbee Development Co. v. Grace*, 668 F.2d 1140, 1151-52 (10th Cir. 1982) (affirming district court decision not to grant evidentiary hearing because one panel member was allegedly denied an opportunity to fully participate in the decision making process); *Fertilizantes Fosfatados Mexicanos, S.A. v. Chemical Carriers Inc.*, 751 F. Supp. 467, 469 (S.D.N.Y. 1990) (finding no basis for vacating award because dissenting arbitrator had open line to voice concerns to other

---

[10] There is conflicting evidence in the record as to how long this initial meeting lasted. Petitioner contends that it lasted no more than one hour, while respondents maintain that it lasted approximately three hours.

[11] The panel convened in Denver, Colorado in December and a winter storm caused the panel members to alter their travel plans.

panel members, and although dissenting panel member did not participate in drafting the majority opinion, made clear his position at the deliberative sessions). Although Arbitrator Schiefelbein was clearly troubled by the length and substance of the deliberations, there is no evidence to suggest that he was in any way excluded from participating or expressing his opinions about the case to the other panel members.

In addition, the Eighth Circuit has not recognized "fundamental unfairness" as a basis for vacating an arbitration award. *Hoffman*, 236 F.3d at 462. The Eighth Circuit has explained that "[i]f a 'fundamental fairness' standard exists, it must apply to arbitration schemes so deeply flawed as to preclude the possibility of a fair outcome." *Id.* at 463. No such deeply flawed scheme was present here. Accordingly, vacation of the award is not warranted.

**ORDER**

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner's motion to vacate or modify the arbitration award [Docket No. 1] is **DENIED**.

2. Respondents' motion to confirm the arbitration award [Docket No. 10] is **GRANTED**.

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Respondents in the sum of $2,512,202, which is to be paid by petitioner. Each side shall

bear its own costs and attorney's fees. The AAA costs, including the fees of the neutral arbitrator, shall be split evenly between the parties.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: Sept. 6, 2001
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:** September 7, 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500